[Civ. No. 18764. Second Dist., Div. Three. Oct. 21, 1952.]

BENEDICT HEIGHTS, INC., Respondent, v. MARY B. GERMON et al., Appellants.

Cletus J. Hanifin for Appellants.

Joseph W. Fairfield and Ethelyn F. Black for Respondent.

WOOD (Parker), J.—In the complaint it is alleged that the defendants, except William McClean and the Santa Monica Escrow Company, were officers and directors of plaintiff corporation from the time of incorporation on January 19, 1948, to March 6, 1950; while said defendants occupied such positions they received $41,500 on behalf of the corporation; all the defendants conspired among themselves to defraud the plaintiff corporation of its assets; the defendants so manipulated the assets that the funds of the corporation came into their hands, and they, without right or authority, appropriated said funds to their own use; many of the records and books pertaining to said transactions were spirited away from plaintiff; plaintiff had no knowledge of said wrongs until about March 1, 1950; the acts of the defendants were wanton and malicious. Plaintiff asked for judgment for $41,500 and for punitive damages.

Plaintiff dismissed the action as to the escrow company. The other defendants answered and denied said allegations.

The court found that the defendants Mary Germon, Louis Germon, Mathew McClean, Sr., and John Ladislaus were directors of plaintiff corporation upon its incorporation, and that defendants Mary Germon, Louis Germon, and McClean, Sr., were officers of the corporation, and that these defendants continued as officers and directors until March 3, 1950; that

about March 3, 1950, Joe Davis, Vid Rosner, Miriam Benjamin, George Fatland, and Charles Stanton were duly elected as directors of plaintiff and since that time were de facto directors of plaintiff and had authority to act in that capacity; that defendants Mary Germon, Louis Germon, McClean, Sr., John Marzicola, and G. A. Ladislaus, while officers and directors of plaintiff and in control of the board of directors conspired among themselves and with defendant William McClean to defraud plaintiff corporation of its assets for their own benefit, and in connection therewith committed the following acts: (a) failed to keep correct account of the papers and transactions of plaintiff as required by section 3001 of the Corporations Code; (b) failed to cause an annual report to be sent to the shareholders as required by section 3006 of the Corporations Code; (c) failed to call meetings of the shareholders as provided in section 2200 of the Corporations Code, in the bylaws; (d) failed to comply with section 11010 et seq. of the Business and Professions Code; that defendant Mary Germon, while using the name ''Mary Ellen Anderson'' purchased under the name of Mary Ellen Anderson 60 acres in Benedict Canyon for $22,500, and said purchase price was paid by the corporation herein; that defendant Mary Germon sold 30 acres of said tract, known as the Benedict Heights Tract, to defendant William McClean for $30,000, who in turn sold said tract to plaintiff for $30,000, and 26 acres to ''Flintridge Heights'' for $26,000, and retained for themselves the balance of approximately 10 acres valued at $9,000, thereby causing the defendants Mary Germon and William McClean to make a secret profit at the expense of the plaintiff; that the acts of said defendants in making such secret profit were wanton and malicious, and plaintiff is entitled to punitive damages; that defendants Mary Germon, Louis Germon, McClean, Sr., Marzicola, and Ladislaus, as officers and directors of plaintiff, and William McClean, received on behalf of plaintiff corporation $44,000 from the sale of shares of stock of plaintiff corporation; that said defendants are unable to account to plaintiff for said sum received by them and have made secret profits at the expense of plaintiff and as a result thereof plaintiff corporation has been damaged in the sum of $36,000; that defendants are holders of shares of stock in the plaintiff corporation as follows: Mary Germon 3 shares, Louis Germon 10 shares, McClean, Sr., 1 share, Marzicola 2 shares, Ladislaus 1 share, William McClean 1 share.

Judgment was for plaintiff for $36,000; and for punitive damages in the sum of $5,000 against defendants Mary B. Germon and William McClean.

Defendant Mathew McClean, Sr., is the father of defendants Bertha Germon and William McClean, Jr. They are real estate brokers, conducting business under the name of M. G. M. Realty Company. Defendant Louis Germon is the husband of Bertha. Defendant Ladislaus is a real estate broker with the M. G. M. Realty Company. Defendant Marzicola is a real estate broker and a contractor.

Prior to December 22, 1947, Mr. and Mrs. Hodson owned approximately 64 acres of land in Benedict Canyon, which land was subject to a trust deed for $15,000. On December 22, 1947, they sold said land, subject to said trust deed, to "Mary Ellen Anderson" for $7,500. She divided the land into three areas as follows: an upper area, consisting of approximately 26 acres, known as the "Beverly Tract"; a middle area, of approximately 33 acres, known as the "Benedict Heights Tract"; and a lower area, of approximately 5 acres, known as the "Five Acres." On December 23, 1947, "Mary Ellen Anderson" and defendant William McClean entered into an escrow agreement whereby said Anderson sold said middle area (33 acres) to said McClean or his nominee for $30,000, which sum was to be paid through escrow. The plaintiff Benedict Heights, Inc., was incorporated on January 16, 1948, and all the defendants, with the exception of William McClean, were the original directors. William McClean sold said property to Benedict Heights, Inc., the plaintiff herein, for $30,000. On February 18, 1948, defendant William McClean instructed the escrow holder to vest title to said land (33 acres) in said Benedict Heights, Inc. Later, he instructed the escrow holder to pay the $15,000 trust deed from money due him from that corporation (the plaintiff). The amount due on the trust deed was paid through escrow. William McClean filed in the escrow a statement that he had been paid in full outside of escrow. On May 27, 1948, Anderson filed in the escrow a statement to the effect that she had received, outside of escrow, all the money due to her from Benedict Heights, Inc. On April 15, 1948, "Mary Ellen Anderson" executed a grant deed which recited that she granted said middle area (33 acres) to Benedict Heights, Inc.

The "Mary Ellen Anderson," referred to in said transactions, was the same person as defendant Bertha Germon—

said defendant used the fictitious name, "Mary Ellen Anderson," in buying and selling said property. It appears that defendant Bertha Germon wrote the signature "Mary Ellen Anderson" on the escrow instructions and the grant deed in such a manner and form that the writing was a disguise of her own usual handwriting and was intended to create the impression that "Mary Ellen Anderson" was a person other than defendant Bertha Germon. On another occasion and in a different deed purportedly made by "Mary Ellen Anderson," the defendant Bertha Germon, as a notary public, attested that said Anderson appeared before her and acknowledged that she executed the deed. In an identification statement of "Mary Ellen Anderson," which defendant Bertha Germon prepared and furnished to a title insurance company, she (defendant Bertha Germon) falsely stated that Anderson was a single person, a retired nurse, and that she resided at a certain address.

The Beverly Tract or upper part of the 64 acres was retained by Bertha Germon (under the name Mary Ellen Anderson), and later she sold said upper part to "Flintridge Heights" for $26,000. She deeded the lower part or the "Five Acres" to William McClean. Said McClean deeded ¼ of the five acres to defendant Marzicola, for his services in investigating prices for improvements on the Benedict Heights Tract. He also deeded ¼ of the five acres to each of three other persons (McClung, Diez, and Stanke).

Benedict Heights, Inc., intended to subdivide the Benedict Heights Tract, but its subdivision plans were not approved by all the governmental agencies whose approval was required.

Soon after Bertha Germon purchased the 64 acres and before she sold the Benedict Heights Tract to William McClean, they (Bertha and William) prepared a proposed form of agreement which was titled "Subscription Agreement Before Incorporation." The agreement stated that it was proposed that the corporation (Benedict Heights, Inc.) which was to be formed should issue 100 shares of stock of the par value of $500 each, and that the corporation should carry on a business of buying, developing and selling the real property known as the Benedict Heights Tract. After the corporation was formed, Bertha Germon and William McClean placed advertisements in newspapers regarding the subscription agreement, and as a result thereof various persons entered into said agreement and paid to the corporation $500 per share for 86 shares, or a total of $43,000. A permit for

the sale of such shares had not been issued by the corporation commissioner.

There was evidence, on behalf of defendants, that each subscriber for a share was told that $30,000, of the $50,000 to be obtained for the shares, would be used to buy the Benedict Heights Tract and that $20,000 would be used to subdivide and improve the property. There was evidence, on behalf of defendants, to the effect that $14,300 was paid for engineering, grading and other kinds of improvement work on the Benedict Heights Tract.

Also, there was evidence to the effect that on March 3, 1950, new directors of plaintiff corporation were elected. The new directors caused the present action (against the original directors and Wm. McClean) to be commenced.

At the time the action was commenced, the plaintiff corporation was delinquent in the payment of its franchise tax, and at said time, due to such delinquency, its corporate powers had been suspended. During the trial, the attorney for plaintiffs stated that the delinquent tax, and the penalty for such delinquency had been paid after the trial was commenced.

Appellants (defendants) contend (1) that since the corporate powers of plaintiff had been suspended at the time the action was commenced, the action should have been dismissed; (2) that the finding that defendants conspired to defraud plaintiff is not supported by the evidence; (3) that even if the defendants who were directors failed to keep adequate books, or to send annual reports to the stockholders, or to comply with any section of the codes, such failure would not constitute fraud or a basis for a judgment for $36,000 damages or for a judgment for punitive damages; (4) and that the finding that plaintiff was damaged in the sum of $36,000 is not supported by the evidence.

The trial court did not specify in the findings or at all the basis upon which damages in the sum of $36,000 were computed. There is a finding, as above shown, that defendants received $44,000 from the sale of stock, that they were unable to account to plaintiff for said sum and they made secret profits, and as a result thereof plaintiff was damaged in the sum of $36,000. It is undisputed that the corporation agreed to pay $30,000 for the Benedict Heights Tract, and that it received a grant deed to said property. There was no finding or evidence that the said tract was not of the value of $30,000, or that the grant deed was not valid. There was no finding that the corporation did not

acquire title to said tract. If the corporation acquired title to said property, and if said property was of the value of $30,000, it would appear that the defendants had accounted, at least, for $30,000 of the amount received. Also, it is undisputed that the defendants caused some improvement work to be done upon the tract, and that some amounts were paid for that work. There was no finding as to the value of, or the amounts paid for, such work. If defendants paid any amount for such work, and if the amount so paid did not exceed the reasonable value of such work, it would appear that the defendants should be credited further with the amount so paid. If defendants were entitled to such credits ($30,000 and amounts paid for improvements), then of course the balance due in an accounting for the $44,000 would be much less than $36,000. The findings were not adequate to show a basis for measuring damages in the sum of $36,000.

■ With respect to making a secret profit, the findings do not specify the basis upon which it was determined that there was such a profit. There is a finding, as above shown, to the effect that defendant Bertha Germon sold the upper area of 26 acres (Beverly Tract) to Flintridge Heights for $26,000, and "retained the balance of approximately 10 acres [presumably the lower area] valued at $9,000.00 for themselves; thereby causing" the defendants Bertha Germon and William McClean "to make a secret profit for themselves." It is indicated by said finding that the trial judge was of the opinion that Berth Germon, as a prospective director or officer of the corporation to be formed, was under a duty to sell to the corporation all the Benedict Canyon land (which she had purchased from the Hodsons) for $30,000 or for the amount she paid for it. In other words, that finding indicates that the trial judge was of the opinion that she was not entitled to sell to the corporation the middle area only (Benedict Heights Tract) and to retain the upper and lower areas. The findings were inadequate to show a basis for secret profits. It does appear that the defendant Bertha Germon attempted, by the use of a fictitious name and by false statements as to her identity, to deceive persons who participated in the transactions involving the Benedict Canyon property. It also appears that the sales of shares of stock were in violation of the Corporate Securities Act. Such deceit and violation of the act, however, are not sufficient to constitute a basis for the award of damages herein. The findings as to damages are too general and indefinite to support the judgment.

■ A further contention of appellants, as above stated, is that since the corporate powers of plaintiff had been suspended at the time the action was commenced (for failure to pay its frachise tax), the action should have been dismissed. Appellants argue that the act of the corporation in commencing this action, during the period when its corporate powers were suspended, was a void act and that payment of the delinquent taxes after the action had been commenced would not have the effect of validating the acts attempted during the period of suspension. Appellants' motion to amend their answer to allege that plaintiff's corporate powers had been suspended should have been granted. There was no competent evidence that the corporate powers had been reinstated. Counsel for plaintiff announced in court that the delinquent tax and penalty had been paid after the trial had commenced. Section 5905 of the Corporations Code provides: "Any corporation . . . whose charter . . . has been forfeited for nonpayment of any license tax . . . may be relieved of the forfeiture upon . . . payment of . . . the license tax due under the Corporation License Act, upon issue by the State Controller of a certificate of revivor to the corporation." Section 5908 of the Corporations Code provides: "A corporation is revived and its powers restored to full force and effect, pursuant to Section 5905, when the State Controller issues his certificate, but the revivor is without prejudice to any action or proceeding . . . which has occurred by reason of the original forfeiture." A certificate of revivor or restoration of corporate powers was not offered or received in evidence.

By reason of the above conclusions it is not necessary to determine other contentions of appellants.

The judgment is reversed. The purported appeal from the order denying motion for a new trial is dismissed.

Shinn, P. J., and Vallée, J., concurred.

A petition for a rehearing was denied November 6, 1952, and respondent's petition for a hearing by the Supreme Court was denied December 19, 1952. Gibson, C. J., and Carter, J., were of the opinion that the petition should be granted.